UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GORDON D. GARRETT and DIANE GAYLE GARRETT,
on behalf of themselves and all others similarly situated,                    PLAINTIFFS


v.                                                                  CIVIL ACTION NO. 3:09-CV-404-S


STATE AUTO PROPERTY & CASUALTY
INSURANCE COMPANY,                                                            DEFENDANT


### MEMORANDUM OPINION

This case is before the Court on two separate and potentially dispositive motions. The pertinent factual allegations can be stated concisely. In September 2008, the named plaintiffs sustained weather damage to their home. They promptly notified defendant State Auto Property & Casualty Insurance Company, with whom they had a homeowners' insurance policy, that they would claim benefits to cover their loss. State Auto did not formally admit its liability under the policy until December 4, 2008, and did not complete its payment of benefits until February 4, 2009.

Plaintiffs, believing themselves entitled (under the Kentucky Insurance Code, KRS 304.12-235) to interest at a rate of 12% *per annum* beginning on the thirty-first day after their notice and proof of claim, filed the instant action in state court. In addition to asserting their own rights, they claimed to represent two separate classes of plaintiffs. The "Paid Claims Class" comprises persons insured by State Auto who, within the last fifteen years, furnished the company with notice of a claim, did not receive payment or an attempt at settlement within thirty days, and did not receive 12% interest on the ultimate settlement. The "Pending Claims Class" consists of persons insured by State Auto who filed a notice of claim but who have not yet received settlement, and whose claims the defendant made no attempt to settle within thirty days of the notice.

The defense removed the case to this Court, invoking federal diversity jurisdiction. Plaintiffs have now moved to remand the case to the state court, arguing that the defense has not adequately proved the required amount in controversy. That motion will be denied.

State Auto asks us to dismiss the Complaint for failure to state a claim on which relief can be granted. That motion will be granted in part and denied in part.

Sitting in diversity, the Court will apply federal procedural rules and Kentucky substantive law in resolving the questions at hand. *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 573 (6th Cir. 2008) *(citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). We address the two motions in turn.

## I.

Plaintiffs' motion to remand the state to the state court is premised on the claim that State Auto has not sufficiently established that the amount in controversy in this class-action lawsuit exceeds the $5 million required by 28 U.S.C. § 1332(d). A defendant seeking removal has the burden of proving federal jurisdiction; he must show by a preponderance of the evidence that (*inter alia*) the amount-in-controversy requirement is met. *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993). For purposes of establishing the amount in controversy, courts rely on the damages sought by the Plaintiff in the original complaint. *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 573 (6th Cir. 2001). "This is a pleading requirement, not a demand for proof. Discovery and trial come later." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008). The defense is entitled to rely on a "fair reading" of the complaint's allegations in determining whether the threshold is met. *See Hayes*, 266 F.3d at 573. "The preponderance standard is a moderate burden that balances the defendant's right to remove and the federal interest in limiting diversity jurisdiction. It does not

place upon the defendant the daunting burden imposed by the legal certainty test, to research, state, and prove the plaintiff's claim for damages." *McCraw v. Lyons*, 863 F.Supp. 430, 434 (W.D. Ky. 1994) (*citing Gafford*, 997 F.2d at 159).

In the case at bar, the plaintiffs have not alleged a total damages figure. They claim that the information needed to calculate the amount at stake—the number of persons in each class and the amount owed to each of them—is in the possession of State Auto, and that in order to remove the case State Auto is required to do the legwork to prove the amount of contested damages. In the Court's view, this asks too much of the defense. It would in essence force a defendant in State Auto's position to go through a lengthy and expensive proto-discovery procedure just to get into federal court. Moreover, it would effectively raise the bar above the "more likely than not" standard set by the Court of Appeals. *Gafford*, 997 F.2d at 158. To require that a corporation dig through fifteen years' worth of records to count potential plaintiffs and assess their possible claims would be to require it to prove the amount in controversy to a virtual certainty.

Here, we think the face of the complaint, fairly read, amply shows that it is "more likely than not" that the plaintiffs have placed more than $5 million in controversy. Although it may be true that any single claimant's potential recovery will be minuscule (12% *per annum* interest on relatively small claims accruing for a matter of days or weeks will not amount to much), the sheer number of alleged class members more than counterbalances their insignificance as individuals. Plaintiffs seek to represent two classes of persons containing, they believe, "hundreds of thousands" of individuals. (Compl. ¶ 16.) The sworn affidavit of Paul Testa, State Auto's Corporate Claims Staff Counsel, suggests that this figure is plausible: He estimates that State Auto has settled nearly 200,000 claims in the last 15 years under its homeowners' and automobile insurance policies alone. (Testa Aff. ¶

- 3 -

3.) Supposing (conservatively, on the plaintiffs' view) that the classes contain 100,000 persons, an average recovery of just $50 each would suffice to clear the $5 million bar. This $50 average would include any sums awarded as interest under KRS 304.12-235, in addition to the compensatory and punitive damages sought in the Complaint. *See Smith v. Nationwide Property and Cas. Ins. Co.*, 505 F.3d 401, 408 (6th Cir. 2007) ("[J]urisdictional analysis must also take into account the ability of Plaintiff and the putative class to recover punitive damages, 'unless it is apparent to a legal certainty that such cannot be recovered.'" (*quoting Hayes*, 266 F.3d at 572).) The plaintiffs also demand declaratory relief, the value of which must be included in the calculation of the amount in controversy. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546 (6th Cir. 2003).

The named plaintiffs' individual claim for interest alone—without taking into account other alleged damages or declaratory relief—exceeds $400. If their claims are typical, a much smaller class than the one they allege could buoy a large number of smaller claimants, or even cross the $5 million line by itself.

A fair reading of the Complaint is sufficient to convince the Court that it is "more likely than not" that the plaintiffs have placed more than $5 million in controversy. All that is required is that the plaintiffs have pleaded facts sufficient to reach this conclusion; the defense is not required to prove the plaintiffs' case in order to obtain a federal forum. The defense has met its moderate burden. Accordingly, plaintiffs' motion will be denied.

## II.

We now turn to the defendant's motion to dismiss under Rule 12(b)(6). State Auto raises four separate arguments for throwing out various parts of the Complaint. First, it asserts that Count II,

which alleges violations of the Kentucky Consumer Protection Act (KCPA), KRS 367.220, must be dismissed because plaintiffs' sole remedy is under the Insurance Code, KRS 304.12-235. Second, State Auto argues that the Complaint's class claims should be dismissed because the plaintiffs cannot successfully have them certified. It also argues that the "Pending Claims Class" must be dismissed because the named plaintiffs have no pending claim and therefore cannot represent the class. Finally, the defense argues that if the class claims are not dismissed, they should be limited to plaintiffs whose alleged injuries took place within the five-year limitations period applicable to KRS 304.12-235, rather than the fifteen-year period pressed in the Complaint.

When a defendant moves to dismiss pursuant to Rule 12(b)(6), the court must take the allegations of the complaint as true, draw all reasonable inferences in favor of the plaintiff, and grant dismissal only when it is beyond doubt that the plaintiffs can prove no set of facts entitling them to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, the court need not accept the truth of legal conclusions or draw unwarranted factual inferences. *DirectTV, Inc.* 487 F.3d at 476 (*citing Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The court may grant a motion to dismiss for failure to state a claim when the complaint fails to plead enough facts to demonstrate the plausibility of the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "Although Fed.R.Civ.P. 8 does not require detailed factual pleading, a plaintiff's assertions must still direct the defendant to the factual cause of the plaintiff's alleged injury . . . . The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions . . . devoid of any well-pleaded facts." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995) (*citing Baxter v. Vigo County School Corp*, 26 F.3d 728, 736 (7th Cir. 1994)).

**A.**

State Auto's first contention is that the plaintiffs' recovery is limited to the interest provided for by the Insurance Code. Consequently, they argue, Count II's claim that State Auto violated the KCPA must be dismissed.

Defendants' base their argument on the proposition that "where a statute both declares the unlawful act and specifies the civil remedy available, the aggrieved party is limited to the remedy provided by the statute. General damages are not available when a specific remedy is provided . . . ." *Foster v. Kentucky Farm Bureau Mut. Ins. Co.*, 189 S.W.3d 553, 557 (Ky. 2006) (*citing Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985)). In response, plaintiffs seek to limit this rule to the context of the Kentucky Motor Vehicle Reparations Act (MVRA), under which *Foster* was decided. But *Grzyb*, from which *Foster* drew its rule, is not so limited. *Grzyb* itself was a case about sex discrimination in employment, and in support of its holding the court cited a string of cases from various federal jurisdictions, none of which had anything to do with Kentucky's (or any other state's) MVRA. *See Grzyb*, 700 S.W.2d at 401.

*Foster*'s holding is not limited to any particular statute. Rather, we think it should be read in conjunction with *FB Ins. Co. v. Jones*, 864 S.W.2d 926, 929 (Ky. Ct. App. 1993). *Jones* dealt specifically with the statute at issue here, and indeed squarely addressed *Grzyb*. The court circumvented the exclusivity rule by observing that the two statutes it was considering "address different kinds of culpable behavior." *Id.* KRS 304.12-235, it thought, "appears to be intended as a prod to prevent laxity in the adjustment of claims." *Id.* The other statute, KRS 304.12-230, provides a remedy for "intentionally tortious acts." *Id.* Because the statutes covered different forms

- 6 -

of improper behavior, the court held, the plaintiffs could maintain claims under both of them without running afoul of *Grzyb* (and, hence, of *Foster*).

We therefore consider whether the two statutes invoked by the Garretts cover different behavior. As the *Jones* court observed, the purpose of KRS 304.12-235—the basis of Count I and the heart of the Complaint—is to provide an incentive for insurance companies to settle claims promptly. Count II invokes the KCPA: KRS 367.220 creates a cause of action in favor of a person who purchases goods or services for personal or household use and who thereby suffers loss as a result of an unlawful act by the seller. KRS 367.170 defines an unlawful act to be one that is false, misleading, deceptive, or unconscionable.

On its face, the KCPA provides a remedy for a different sort of harm than that covered by the insurance statute: It protects consumers against fraudulent and oppressive business practices. The Complaint alleges that State Auto violates this statute by making it a regular practice not to offer to pay interest on claims paid beyond thirty days of notification. This practice, plaintiffs allege, is unconscionable. (They are left with that allegation because any such practice is self-evidently not false, misleading, or deceptive.) In response, the defense asserts that plaintiffs are attempting to use the KCPA to recover for the same activity for which they seek interest payments under the Insurance Code, and that therefore the KCPA claim must be excluded.

The Court reads the complaint and the relevant statutes somewhat differently. Just as the *Jones* court distinguished a statute targeting intentional behavior from KRS 304.12-235's "prodding," we think KRS 367.220 creates a separate cause of action against perpetrators of fraud and oppression. The KCPA cause of action requires proof of a false or unconscionable business practice, an element over and above the insurance statute's simple requirement that a plaintiff have

personally received no timely good-faith offer of settlement. And while the insurance statute provides only for the recovery of accrued interest, the KCPA explicitly leaves open the possibility of punitive damages and equitable relief. The KCPA is in the Court's view sufficiently distinct in both its elements and its remedies to fall within *Jones*. The Complaint thus seeks to assert two distinct causes of action.

However, plaintiffs have another problem: In order to state a cause of action under the KCPA, they must allege facts that, if true, would be sufficient to show that State Auto acted unconscionably. This term, as used in the KCPA, has been rarely addressed by Kentucky courts, and the parties have not addressed the question with any specificity. Because of the KCPA's connection with the world of consumers and contracts, however, we think contract law is an appropriate source of guidance. *Cf. Ford Motor Co. v. Mayes*, 575 S.W.2d 480 (Ky. Ct. App. 1978) (finding "unconscionable" for KCPA purposes a warranty policy that vitiated a purchaser's right to the benefit of his bargain under the U.C.C.). The U.C.C. evades providing a precise definition of unconscionability, stating only that "[t]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." KRS 355.2-302 cmt. 1. Kentucky courts have not provided any clearer of a picture; the best they seem to have done is to say that the meaning of t he word is "generally well understood by those who want to understand [it]." *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 360 (Ky. Ct. App. 1978) (*quoting Dare To Be Great, Inc. v. Commonwealth ex rel. Hancock*, 511 S.W.2d 224, 227 (Ky. 1974)). The leading federal-court case provides this summation: "Unconscionablility has generally been recognized to include an absence of meaningful

choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965). This definition does not translate precisely to the present context, but the broad outlines have some application. An unconscionable business practice for KCPA purposes would be one that misuses a seller's superior resources or bargaining power to enforce grossly unfair terms or conditions on a buyer after formation of a contract.

We do not think the mere failure to pay statutory interest rises to this level. The existence of the interest provision is, as we have said, a prod to action. Ignoring the prod subjects the company to a higher-voltage shock as interest accumulates, but allowing that to happen is not the sort of culpable behavior that typically subjects a business to sanctions for unconscionability. Plaintiffs' more precise claim is that "[i]t is the normal and regular course of conduct and business for State Auto to never offer to pay interest on claims which are paid beyond the thirty days." (Compl. ¶ 27.) But even that practice, supposing it to exist, does not oppress consumers: they are perfectly capable of demanding the interest payment and of going to court to enforce the obligation where necessary. The Insurance Code, KRS 304.12-235(2), dictates that the value of a settlement "shall bear interest" after the thirty-day period; a person who believes his settlement is not sufficient is capable of seeking a remedy at law. Accordingly, we hold that State Auto's alleged practice is not unconscionable as a matter of law. It has therefore not stated a claim under the KCPA, and Count II will be dismissed.

## B.

State Auto next argues that the plaintiffs' stated class claims should be dismissed now, before they have even moved for certification. The defense gives two reasons for this conclusion.

**1.**

First, it argues that as a matter of law no class can be certified for a violation of KRS 304.12-235, because (it says) the element of good faith inherent in a claim under that statute necessarily entails an individualized inquiry that precludes treatment of hundreds of thousands of plaintiffs as a single class.

The Court disagrees with State Auto's understanding of the statute. In relevant part, it reads: "If an insurer fails to make a good faith attempt to settle a claim within the [thirty-day period] the value of the final settlement shall bear interest at the rate of twelve percent (12%) per annum . . . ." KRS 304.12-235(2). An insurer could incur liability under this provision in either of two ways. First, it could make only bad-faith attempts to timely settle a claim—for example, by grossly lowballing the value of the damaged property. Where an insurance company made a settlement attempt within thirty days, the question whether the attempt was in good faith is (as the defense points out) a necessarily particularized inquiry into the circumstances of the individual case. However, an insurance company can also run afoul of the statute by failing to make any attempt whatsoever to settle the claim within the time limit. If the company has not even tried to settle, it cannot possibly have made a good-faith effort to do so.

Plaintiffs have taken advantage of this fact in crafting their Complaint. Both classes for which they seek certification are specifically defined to include only persons with whom "State Auto *did not attempt* to settle their claim within 30 days of being furnished the notice and, if requested, proof of claim." (Compl. ¶¶ 15.A, 15.B (emphasis added).) The Complaint makes no mention of good- or bad-faith efforts to settle; it speaks only of cases in which State Auto made *no* effort to settle. The plaintiffs are not interested in representing anyone who claims that State Auto's offers

were in bad faith. They seek only to certify classes of persons with whom the defendant did not try to settle at all within the statutory period. No individualized factual inquiry into good faith is required to determine whether a person insured by State Auto received an offer of settlement within thirty days of filing a notice of claim. A quick glance at insurance records and correspondence should be sufficient to determine whether a particular person falls within the proposed class definitions. Defendant's objections fail on this point, and its motion to dismiss will therefore be denied in this respect.

## 2.

State Auto next argues that the Pending Claims Class must be dismissed from the suit because the named plaintiffs are not class members and therefore cannot represent it. Here the defense is on firmer ground. Indeed, the first sentence of Rule 23 closes the case: "One or more *members of a class* may sue or be sued as representative parties on behalf of all members . . . ." Fed. R. Civ. P. 23(a) (emphasis added). Plaintiffs are not members of the Pending Claims Class. They have received payment of their claim (less the interest they seek in this suit), and therefore fall outside the definition of the class as stated in their Complaint. Under Rule 23 (construed in accordance with the *expressio unius* canon), they therefore cannot bring suit on behalf of the class. Their assertion that they can adequately represent it is irrelevant. This conclusion has nothing to do with Article III's standing requirements; it is compelled by the plain text of the Rule. Accordingly, plaintiffs' claims on behalf of members of the "Pending Claims" Class will be dismissed.

## C.

The defense's final argument is that the class represented by the named plaintiffs should be narrowed to include only persons whose claims arose within five years of the Complaint's filing.

Plaintiffs' class-action claims are founded on the Insurance Code and the KCPA. KRS 304.12-235 does not specify a limitations period. It is therefore governed by KRS 413.120(2), which supplies a five-year statute of limitations for any "action upon a liability created by statute, when no other time is fixed by the statute creating the liability."

Rule 9(f) makes allegations of time material in testing the sufficiency of a complaint. Consequently, although the statute of limitations is generally considered an affirmative defense that must be raised in the Answer, it may also be raised and considered on a motion to dismiss. Such a motion may be granted "when it is apparent from the face of the complaint that the time limit for bringing the claim has passed." *Hoover v. Langston Equipment Associates, Inc.*, 958 F.2d 742, 744 (6th Cir. 1992) (*quoting* 5 Wright and Miller, Federal Practice and Procedure § 1308 (West 1990)). Here, it is plain that any claims under the Insurance Code arising more than five years before the Complaint was filed are time-barred. Under *Hoover*, Rules 9(f) and 12(b)(6) grant the Court the authority to dismiss untimely claims at this stage, and we will exercise that authority. The effect of this ruling is that the class of plaintiffs regarding whom discovery can be taken is restricted to those persons whose claims against State Auto arose within five years of the date of the filing of the state Complaint.

*       *       *

The Court will issue a separate Order in accordance with this Opinion.

**Charles R. Simpson III, Judge**
**United States District Court**

December 18, 2009